Good morning, Your Honors, and may it please the Court. My name is Philip Jelso and I represent the appellant Blaine Handerhan in this case. At this time I'd like to reserve two minutes for rebuttal. Thank you, Your Honor. Your Honors, the judgment of conviction in this case must be vacated and the case remanded for resentencing for the following reasons. The first is that the sentence imposed in this case was procedurally unreasonable because the district court failed to meaningfully consider and formally rule on the appellant's motion for downward departure pursuant to 5H1.3 at step 2 of the Gunther process. Why don't you go straight then to the Jackson exception, which your opponents have briefed. Your Honor, the Jackson exception is when the government concedes authority. The authority to depart under a certain guideline ground. And then that concession gives this Court a basis that the silence by the district court therefore means it denied the motion for downward departure. So let me read you something here from the sentencing transcript. This is Mr. Clancy, the prosecutor, speaking at sentencing on page 120A. He says, quote, the government for formality's sake would request that the court exercise its discretion to deny the downward departure, unquote. Is that not an express statement to the district court, you've got discretion, you think you should exercise your discretion and formally rule denying the motion? Your Honor, Mr. Clancy is conceding discretion at that point. The plain language is there. Sure. Why isn't that exactly Jackson? Because Jackson, Your Honor, in that state, there are two reasons. Number one, in this case, Mr. Clancy on two occasions is asking for a formal ruling by the district court. So the government is asking for a ruling. It's not only asking for a denial, it's asking for an actual ruling on the record. Number two, Your Honor, in Jackson, well, hold on, you say number one, that. Why is that a problem? Why is it a problem for the court to urge, or for the prosecutor to urge the court, go ahead and exercise your discretion and say no? Oh, Your Honor, it's not a problem for the government to do that. What it is, though, is it's giving the court notice of two things. It's saying, you have discretion and rule. So not only is the defendant asking, but the government itself is asking for it. And in Jackson. I'm not sure how that distinguishes Jackson. Well, I think the next step does, Your Honor. I think in Jackson, there's silence by the district court. In this case, there isn't silence by the district court. What you have is you have the government, excuse me, the court at, when it's pronouncing sentence, making a statement in which it says, the government is asking for a 10-year sentence, which is the statutory maximum, and is less than the guidelines it would provide for this That's not the case, Your Honor, unfortunately, I mean, unfortunately for the court. The guidelines provide the statutory maximum. So there is two things that are operating. Well, but the, the court then goes on to say, I'm considering a presentation. I'm somewhat impressed under the factors that a variance could be granted in this case. Considering all factors, I will make a slight variance from the statutory maximum penalty. Your Honor, on the variance argument, he does say that. But then he goes on to say on the variance argument, that he is, does not believe, the, or I'm sorry, does believe that these penalties for this offense are more serious than they need to be. But that's not the departure argument. Sure. So, so sticking with the Jackson exception, what is it about the district court, I mean, I thought your briefing was that the court did not rule on the departure. That is my briefing. The court did not rule. So if the, if the government said, and you've rightly conceded it, because it's right there on the transcript, that the government did acknowledge before the district court, you've got discretion, Judge, you can depart, we don't want you to. And the, and the judge doesn't rule, I'm having a hard time understanding how that's not Jackson. Well, I think the court's silence in Jackson, with respect to the departure, is different from this case. Because what happens in this case, Your Honor, is that you have a statement of the confusion regarding the 10-year statutory maximum and the guideline range in this case. They become one and the same. When you say confusion, the court says, I mean, it's true that under the guidelines, the statutory maximum becomes the guideline range. But it's also true that when you calculate the guideline range, it's above the statutory maximum. Aren't you asking us to put a whole lot of weight on the court saying, well, the guideline range is high here, but the statutory maximum is X? You're wanting us to read into that, that the court didn't know what was going on. That seems an awful big weight to put on a mighty thin read. Your Honor, I believe that there is a, the record has to be looked at as a whole. And despite the concession by the government, that there is discretion to deny the authority, or deny the downward departure motion. You have to look at what happens in the entire record. And that includes the government asking this court, or the district court, excuse me, to make the formal ruling. He doesn't. Right. Then what happens is, is that you have these statements of sentencing, or now at imposition of sentencing, regarding the 10-year maximum. Then you have, as Judge Rendot had gone, or was going towards, regarding the regret, or I don't know how you want to characterize it, but the policy considerations regarding these guidelines. You have those three facts going on at the same time. That in my mind, Your Honor, distinguishes it from Jackson. Because if it was just enough for the government to concede discretion, then it would make other decisions of this court, and specifically the more recent decisions of this court in Thomas and in Griffiths, in which the court, in this court, says that it needs to formally rule. Because that flows through in Goff, as Judge Greenway, I believe, or was Judge Jordan, I forget, I apologize. As in Goff, when it says that the procedural error flows through the substantive error. And in this case, that's what happened. You don't know where the starting point is under the guidelines. You don't know if it's a... Well, at least under Jackson, we've said that we can infer that the court understood it had discretion, if the government tells it it's got discretion, so that if it doesn't explicitly rule, we'll infer that it was knowingly denying it. That's the tenor of Jackson, right? Your Honor, I would agree, but the inquiry doesn't stop. Right. Then you could go beyond that, and you can deal with your Gunter Step 3 position. I don't think we run to Step 3 yet, Your Honor. I still think we're stuck at Step 3. I think that if the government's concession of a discretion in its request to deny the motion was enough, then that would be the end of the inquiry. But I don't think it is. I think the inquiry is still into the ambiguity of the record. You argue that the government, or that the judge's reference to recovery efforts, you say that helps you because the court didn't really rule on the addiction as such, but it shows awareness of this situation, awareness of the facts that really support what you think the departure should have been. Your Honor, it shows an awareness of some of the facts, because the facts of the mental condition is the OCD, the depression, the anxiety, and the Internet addiction. The PSR didn't mention, they said there are no factors warning departure. Correct, Your Honor. I don't think there's any notation even of a request for departure, is there? I don't believe in the PSR. There is, Your Honor. There is. You didn't file a motion for departure, did you? You put it in a sentencing memorandum? Your Honor, I believe former counsel did put it in a sentencing memorandum, and then they argued it at sentencing. But I believe, Your Honor, that, again, going back to Griffith, I think that the inquiry doesn't end with a statement by the government. Let's turn to your variance argument, and talk to us why you heard Judge Rendell reference the portion of the transcript where, I think it's at 126 or 128, it's right at the end of the judge's sentencing statement, where he says, I'm impressed by the, I'm somewhat impressed by the 3553A argument that's been made for a variance. So I'm going to, in fact, bury down a little bit. How is it wrong for the court to say, I've heard your various arguments for variance, and I think they've got some merit. I'm going to, in fact, bury it. Where's the error? Well, Your Honor, the error is in not parsing your variance arguments. Well, I think they have to, I think the district court has to acknowledge and has to respond to properly raised variance arguments. I think the deconstruction was so mass, so if you say, yeah, so if you, your position is that since prior counsel argued he's got an emotional problem, mental illness with OCD, he's got an internet addiction, he's got, I can't remember what other problem, he just gave us a catalog, anxiety disorder, yeah, and we've got a 2G 2.2 problem because of the deconstruction argument, that in order for this not to be reversible, the district court had to go through and say, well, here's what I think about your OCD, here's what I think about your anxiety, here's what I think about your internet addiction, here's what I think about your sentencing guideline argument, here's what I, it's not enough to say, I've heard your variance arguments, I think you've got some traction, and I'm going to go ahead and give you a variance. Your Honor, respectfully, I disagree, and let me explain why. There's two problems with that. Number one is that the three-step process is there for a reason, but, and I understand that the three-step process informs step three, okay, step one and step two, so I think it is important that this language of this court has been formally ruled to step two, but going to step three with the variance arguments, and I didn't want to concede that, I just wanted to put that out there, what the court says at sentencing, and I think it's important to look at 131 and 132 of the record. It says, first of all, at 127, the court apologizes to Mr. Handerhan for imposing the sentence, and then he goes at 131 and on 132, he says, Mr. Handerhan, nine or eight years is rather a long sentence, and I think that some of these penalties for this offense are more serious than they need to be. Now, if the government, excuse me, if the district court was including, okay, the variance arguments under the umbrella of, I've heard what you've said, and I'm going to vary, then I believe the court would have said at that point, Mr. Handerhan, 12 years is a lot of time, and some of these penalties are worse than they need to be, but he doesn't. What he does is he says eight or nine years, so he's talking about the sentence he imposed, okay, which is a 96-month sentence. The next sentence becomes, these sentences are more harsh than they need to be. What that shows in my mind, Your Honor, from reading this record, is an ambiguity, because it appears he is agreeing with the policy, a policy disagreement with 2G2.2, but it also means he didn't consider the variance arguments, because if he did, he would have said from 120. Boy, that's a, that's loud. Well, you have a district judge saying that they are, they are prepared to vary and may in fact vary, and you want us to send it back? Your Honor, what I want, yes, in this case, I want this case to go back because there were considerations before this district court that were, they didn't follow the two-step process. I believe that. Well, what would we tell the, let's stick with, let's stick with part three here. Okay. Okay? Leave the, leave the step two piece aside. Focus on step three. You know, there used to be an old commercial where the tagline was, what's a mother to do? What's a district court judge to do? What are we going to tell a district court judge to do at the, at the level of detail you've just described? How does, how do we explain to a district judge how to eliminate all ambiguity from a sentencing statement so that we won't have enterprising defense counsel coming to us and saying, yeah, but if he had said that earlier in the transcript, it would be different. Your Honor, I'll take the enterprising comment as a compliment. It certainly is. Thank you. I appreciate that, Your Honor. But what it, I think the instruction is what has been instructed from this court throughout, which is a meaningful consideration of the pending factors. This court has said to the district court that if you have a properly raised argument, it needs to be acknowledged and responded to. But this, there is so much here that is wrong with this defendant. I mean, these, he has loads of problems, you know, a hoarder, addictions, child pornography. I mean, this is, you know, the litany and the testimony of Dr. Stein, I mean, the court heard it all and reacted to it. And granted a variance. And granted a variance. How are we to say, I mean, the court was presented with all of this and said this, you know, this is a sick man probably. And we have a lot of district court judges who do not like the sentences that are required, that are suggested to be imposed on the child pornography. And clearly the judge thought this man was probably not as responsible, probably because of his illnesses. I don't know. I agree with Judge Jordan. It really places quite a burden on the district courts. And if you can write that opinion in a way that we all wouldn't have to get out of Dodge when we see a district court judge in the elevator, it's just, it's very tough. I think, you know, if there was one problem and it wasn't mentioned, that might be something and totally ignored and it seemed like the district court didn't even realize it. But with the litany and the testimony and the evidence of all the things that were wrong with this defendant, it'd be tough for us to, it might be difficult for us to order judges to do that. Your Honor, I notice my time is up, but real quickly, I understand what you're saying. However, I think there are three problems. It is narrowed down to three problems. Just because the district court considered certain facts, I think that because it didn't, if it followed the process, this would be easy. I wouldn't be here today. All he had to say was denied, but he didn't. And I think that creates the ambiguity on the record. And you're right. I'm looking through the, I'm looking through what the district court is saying as to its, but that is what the district court said and didn't say. But nothing was said by counsel after the sentence was imposed saying, Your Honor, you failed to rule on my downward departure. Your Honor, it wasn't, but I don't think that's the standard. I don't think at this point it's incumbent upon district, upon counsel to do anything. Sevilla is still the law. I believe the recent court's decision said that one panel can, I'm not going to go through that, but I don't think that's, I think that is the law at this point. Thank you, Your Honors. All right. Thank you. Thank you. Good morning. And may it please the court, I'm Assistant U.S. Attorney James T. Clancy, and I represent the United States in this case. And you were there. You were there. I was there. So, Mr. Clancy, you can, you can help us out. First, why don't, if you would, why don't you respond to the, to the Jackson argument that your opposing counsel's made here? I disagree with my colleague. I think this is Jackson. And I think it even goes a little more than Jackson. In Jackson, the ruling from this court was that if the prosecutor acknowledged the court's discretion, this court could infer that that discretion was exercised. And Jackson said that that practice would continue post-Booker. And here, twice, the prosecutor raised the judge's discretion. So there really is no ambiguity. There is nothing in this record that could make this court think that the district court did not realize it had discretion with respect to the departure. The one thing that defense counsel, appellate counsel, would like is for the judge to say the word denied. But he did that without saying it. Defense counsel at sentencing effectively said, Judge, I want a departure and a variance. And the prosecutor said, Judge, you have the discretion on the departure. Don't grant it, but consider a variance. Now, even in Jackson, we said, look, district court silence is not something we're happy about. It is not the preferred practice. Right. We don't want you doing that. And yet, here we have a district judge doing precisely what we've said, please don't do, even in Jackson, saying, please don't do. And the government's saying, yeah, let it slide again. Is there a problem there? Well, I think the district court in this case did a little bit, albeit a little bit more. And that was, say, I will grant a variance. So we know- That's step three. That isn't step two. Doesn't address the step two problem. Understood. We've got no ruling on a step two when we have repeatedly said to district courts, hey, you got to rule. You actually have to rule. So if every time we're confronted with this, we hear somebody say, Jackson, don't worry about it. Have we just taken Gunter's step two and made it a nullity? I don't think all the time, Your Honor, and certainly not in this case. Because in this case, this court clearly realizes that the district court knew of its discretion. And I think that is what the main concern is. Do we know whether the district court realized it had discretion? This is not a case- So the concrete step going forward is, did the assistant remind the judge, if the assistant did, it'll be okay. If the assistant didn't, then step two was not fulfilled, and we remand. Well, as in all cases, we look at the entire record. And whether it's the assistant who says it, or the court who says it, or the defense counsel who says it, as long as the record reflects the district court's knowledge of its discretion, this court has said we can infer the exercise of that discretion. What if after you're saying that, the district court imposed sentence without mentioning the word variance or departure? If that were the case, it might be different. But that was not the case. So you're saying also by referencing variance, it was implicit that of the two, he was choosing variance. Yes. Wow. Had this court said nothing, had the district court said nothing, I think we would have a problem. Had the district court done what the district court did in Lofink and said, I hear the difference between departure and variance in my practices. I don't rule on departures. I put it all in variances. That would be a problem. But here, there was no challenge to the concept that was raised when I reminded the judge he had discretion. No challenge to that. No question about it. It was recognized not once, but twice on the record. We haven't put that onus on defense counsel yet, have we? No, not yet. Not yet, Your Honor. So looking at the variance piece of this, would you agree that the so-called deconstruction argument, the 2G2.2 argument, is a non-frivolous argument, that's a serious argument? Oh, I think it's a serious argument. And I think the district court addressed it, albeit in very, very shortly, but addressed it. How did it address it? Tell us, what did the court, because this is what Jackson says, the case that the government likes so very well. It says, the record must show a true, considered exercise of discretion on the part of the district court, including a recognition of and response to the party's non-frivolous arguments. That's in the context of dealing with 3553A. It is. And when the district court said the words that you read out of the transcript, when he said to Mr. Handerhan, words to the effect of, I think some of the sentences in these kinds of cases are too severe. I think that tells us that he heard the deconstruction argument, he considered the deconstruction argument, and that was part of what formed the two-year variance that he granted. Along with the other things that he mentioned. Of course, your opponent says, no, that can't be right, because when he talked about the sentence, he talked about the sentence he gave with the variance, as opposed to the guideline sentence being perhaps so severe. What's your response to that assertion that there's ambiguity there that shows the district court, or has left us with a record that doesn't reflect the considered exercise of judgment with respect to this non-frivolous argument? I think what that does is inject ambiguity where it does not exist. This court has always told district courts that it must be able to tell that there was careful consideration of the 3553A factors, and that there was consideration of non-frivolous arguments. And the court has never required district courts to parse out what goes under each factor, and to explain what fits into each compartment. It allows the district courts that discretion to speak as they do. And go all the way back to the Supreme Court's ruling in Rita, where it was a very, very thin sentencing transcript. And the Supreme Court said, where a matter is as conceptually simple, and the record makes clear the sentencing judge considered the evidence and arguments, we do not believe the law requires judges to write more extensively. This court has never required its district courts to use some litany of magic words, and to fit all of the reasons for a sentence into neat compartments. And what we see in this sentence is not only quite a bit being talked about at the sentencing proceeding itself, but that departure motion raised in the pre-sentencing memoranda, that in the defendant's pre-sentence memo was extensive. And it's clear from the record that the district judge read that and considered it all, and then gave out his sentence. Well, was it, was the argument made to the district court that, follow the Second Circuit's Dorby decision, that this guideline is, is inconsistent with the statute itself? That you, you, you're, you're dealing with a, a guideline that ratchets up the penalty that is gonna put, compresses all the offenders at the upper end of the guideline, and makes it impossible to make individualized decisions. Is there anything in the record that reflects engagement with that argument? I, I wouldn't call it an engagement. That argument was made primarily in the sentencing memorandum. And does it, whether it's made to the judge in open court, or it's made in the sentencing memorandum, the, the, the court has an obligation to, to address those arguments, doesn't it? You can't say, well, I, that was your papers. I'm not paying attention to that. Certainly. But when the district court in this case went to its final statement and imposed sentence, the sentencing guidelines for these kinds of offenses is one of the things he talked about. And, and unless this court is going to impose on district courts some kind of length requirement or, or depth requirement about how it responds to all those arguments, I think it has to take this amount the judge said in this case as sufficient. It shows us that the court considered the argument that the child pornography guidelines are too severe. And the court also knew that the calculation under those guidelines was 155 to 181. Mm-hm. And, and that the statutory cap on the offense brought the guidelines down to begin with. So, it's not like, there's nothing that can give us the impression that the argument was raised and it was completely ignored by the court. That certainly is not the case. The other thing, looking at the sentencing memorandum, it refers on page 22. Counsel says, requesting a downward departure and or sentencing variance. And then when the downward departure is actually referred to, it's referred to in light of the fact that he suffers from a mental health condition and has taken extraordinary measures to rehabilitate himself. And the, the judge in this, you know, handing this to you furthers your argument, I guess, the judge does refer to his efforts to rehabilitate himself. He certainly did. And to the extent you say that that's kind of the, the proxy for that argument that might, might show a response to what's been, what's been urged. And again, I, I think as we do in every case, we, we, we try to look at the entire record and, and not parse it out piece by piece. Well, let's. Certainly that's true. But what, if anything, should we do to help district judges to address. I'm going to shift back to Gunter step two now for a minute. You tried, by my count, I got three or four times to get the judge to rule on the departure motion. It was at least twice in the sentencing hearing and, and it was mentioned in papers too, if I'm not mistaken. So, you, you tried to get the court to do it and, and, and we certainly recognize you, you know, we're not encouraging the AUSAs to run up to the bench and grab the judges by the collar and say, no, no, no, you really actually have to do this. So you did what you could, but is there something we should do? What would the government have us do? Recognizing that there's this precedent to get judges to rule on departure motions. Should we be saying something? Well, I think the court has said it already. And I don't know if it's not working, right? I don't know if it warrants reminder. But the court does allow inference from what is said on the record. And in this case, I think there is enough to uphold this sentence. I, I'm loathe to say that this court should instruct district courts to use magic words. The court has never done that. And, and I don't know how effective that will be. But deny is not really a magic word, it's a ruling. Well, certain words, certain words. Maybe instruct counsel to use magic words. Because quite frankly, there was no departure motion filed in this case. There is a section four of a lengthy sentencing memorandum with a heading. The applicable enhancements are directly related to Mr. Hanahan's mental health conditions. And then in the first line of this, the small print, respectfully requests the court apply a downward departure. But if you're reading the, you know, is there a departure requested in here? You don't have a motion, you have it in the memorandum. If I were the district court judge, I might have kind of glossed over that myself. Well, and, and I think the difficulty with that is, you know, glossing over it to the point where it is not addressed at all. It is not considered, and then that puts the question on defense counsel of effective representation. So we do many times, we, we take that reference in a sentencing memorandum. We elevate it, so to speak, to a motion for downward departure. And, and we, we write about it and we talk about it in court and, and here we are. But I don't think, I, I, if I can get back to the, to the very beginning, the core in, in my last minute, what this court has always looked at is whether there really is ambiguity in the record. As to whether the district court knew it had discretion. And in this case, there's nothing in the record to give us the feeling that the court did not know it had discretion. And if that's the case, and we know it denied the departure, the court is without jurisdiction to review it. We know from the, albeit thin transcript, but we know from that transcript that the judge considered many of those arguments, if not all of them, that were made by defense counsel in granting that two year variance off of an already capped guideline. Thank you. Thank you. Briefly, Your Honor, to answer Judge Jordan's question, what this court should do is reverse and remand. In, in the most recent decisions from this court, with respect to the Gunther step two in the process, this court has, what's instructive to me is a case of Flores Mejia, in which this court, no, strike that, excuse me, it's not, it's, I apologize, it's, it's Thomas. And in Thomas, Judge Jordan, you were on the panel. In Thomas, there was a question on the record whether it was an eight or ten month being, I'm sorry, eight or ten level departure being the high end of the range. In that case, it was not, it was not germane to the sentence and to the issue which it was remanded for. But there was a cautionary instruction to the district court to formally rule on any departure motion and to exercise its discretion. I don't know how clear in those type of cautionary words this court can be to district courts. I think in this case is one in which a remand should happen for resentencing to formally rule on the departure motion at step two to make the process clear, and then let them go through on step three and formally rule on the step three motions. I think there is ambiguity on the record. I think this case is more like low fink than the government, the government pretends it to be. In low fink, yes, there was a blanket, I am not going to consider downward departure motions, but consider them at step three. The court doesn't deal with the downward departure motion in this case, and does consider some of the factors at step three. That doesn't cure the failure to rule at step two. When it goes back, you don't think the district court judge is going to say, what are they talking about? I was presented with a departure for, because of his rehabilitation and all he did, and a variance, and I granted the variance. Of course I denied the departure. I mean, it might be the shortest resentencing known to man. Your Honor, it may be the shortest sentencing known to man. However, it is something that the defendant is entitled to, and this court is entitled to, which is a clear record. And that record may be that he may deny the downward departure motion, he may deny the variance motion, he may impose 96 months. But at that point, the record will be clear as to what he intends to do, and what factors into his sentencing decision, and what doesn't. All right, thank you. Thank you, Your Honor. Case is well taken.